Judge Buckneh,
delivered the opinion of the court.
Richard West and Allen Hendricks executed their joint and several promissory note, dated, 4th January, 1818, to William Kerby, the defend *56 ant, as executor of the estate of'James Hendricks, deceased, for tbe sum of $77, payable eleven months after date.
On this note Kerby instituted suit, and recovered judgment against West alone, who thereupon filed his bill in chancery against Kerby, and obtained an injunction against the judgment at law.
Ills grounds of equity are thus set forth in his bill:
He and Allen Hendricks, son of said James Hendricks, the latter acting under a power of atioméy from his father, borrowed for said James, a small sum of money from Jesse Harris, and executed their note for ■ its payment. Before the money was paid, James Hendricks died, having by his last will, appointed the defendant his executor, who qualified as such, and'paid to Harris the amount of thenote in discharge thereof. Ker-by then applied to the complainant and said Allen on the subject, requesting them to execute, to him as executor, a note for the amount which be had paid to Harris, saying that it was necessary for him to use it as a voucher, in his settlement of said estate, and that it was intended to be used in that Way only. The complainant was iliitlerate, and reposing confidence in the statements of the defendant, he and said Allen executed the note above described, on which, to his great astonishment, Kerby had sued him, recovered judgment for principal, interest and costs, which he had replevied for two yea s. Kerby answered rather evasively. He admits his appointment as executor. With respect to the borrowing of the money from, and the execution of the note to Harris,"and the purposes for which it was borrowed, he professes to be igno■rant, and requires proof. The note on which he recovered judgment, was, he says, for money loaned to complainant, and that Allen Hendricks, was his surety. That the note w as executed to him as executor, be-cause the money belonged to tbe estate of bis testator, •and a settlement of it could not then be made.
He then, in geneial terms, “denies the other material facts charged in said bill.” He does not say a word about the charge of his application to the complainant and said Alien, for a note, on account of mone}r which he had paid to Harris; whether he had paid any, or had executed to him any note on that account.
Release oí witness who is interested, by pro per person, renders him competent.
West amended his bill after some timé, alleging that he had paid off and discharged the replevin bond aforesaid, and prayed that the defendant might be decreed to return to him the amount, &c. to which the defendant made no answer.
Upon the hearing of the cause-,', the court dismissed the bill with costs, and ’West to reverse it, prosecutes this writ of error.
The deposition of Allen Hendricks was taken to bfe read as evidence in the cause several times.
Before it was taken the lastbime,l,' West executed to him, which he accepted, a release from all ’liability to him, in consequence of the payment of the money to Kerby, by West, secured by the note on which’the judgment had been obtained.
The defendant-objected to the reading of the deposition as evideiice, on the ground of the supposed interest of the witness, waiving all other objections to it.
The circuit court correctly overruled the objection. Whatever might have been the force'of the objection, if no release had been executed, that entirely removed it, so far as the objection was applied to his competency. The money had been paid, and the release was a complete shield against all liability.
His deposition fully supports the allegations of the bill; as does also, that of Andrew Hendricks, who swears that he heard the defendant repeatéclly -acknowledge that the note on which the judgment aforesaid was obtained, was given for the debt to Harris, and that he had taken it as a voucher only, to enable him to settle his account as executor. -
The deposition of Harris, from whom the money had been borrowed, was also read as evidence. He says that Allen Hendricks applied to him, as agent for his father, to borrow some money. He loaned about ‡75 or §80, and took said Allen’s note, with West as his surety. After the death of James Hendricks, he applied for the .money to the obligors, who told him, as soon as the sale of said James’ estate was made, heshouldbe paid. They then executed to him smaller notes for the amount due, so as that each might be subject to the jurisdiction of a magistrate. After the sale aforesaid, the tbifench *58 not spoke to him on the subject, and executed to the witness his note, for the principal and legal interest due by said West and Allen Hendricks, saying, that as executor he could not pay more than legal interest. When this was done, the complainant and said Allen were both present. The defendant shortly thereafter paid the witness the money due, and West paid him the extra interest.
Upon the bill’s answer, and this proof, the decree ought to have been in favor of West. The money was borrowed from Harris, for the benefit of James Hendricks, and was honestly applied to the purpose for which it was borrowed. It could have been recovered by law from the executor; but he voluntarily paid it, and took the note, on which he recovered judgment, for the purpose of showing that he had paid the money ascxecutoi’.
■No deposition was taken on the part of the defendant, except that of a witness named Thompson. His was twice taken. The statements in the first, differ materially, from those contained in the last; and neither depositions supports the answer of the defendant. He was the subscribing witness to thenote.
In his first deposition, he says, that a settlement took place between complainant and defendant, at the house of the latter, where the note was executed.
In answer to leading questions propounded by defendant, he says, that he took the accounts, and explained them to West, who seemed satisfied, and the note was executed for the balance due; that the defendant at that time let the complainant have a sum of money, the amount not recollected; but he thinks it urns forty or filly dollars; that he understood at the lime, that West wanted the money to pay Harris. Allen Hendricks was then present. This settlement took place at a time when, anu the place where he purchased a negro woman from the .complainant. In the latter part of the deposition, he says, the note was executed for the balance due on settlement, and the money then advanced.
In his second deposition, he says, that he purchased the negro alluded to above, either in Richmond or at the house of the defendant, he was not certain at which *59 place it was, nor whether the defendant was present. He also says, that at the time he purchased said slave, the complainant and defendant made some settlement, but he had no recollection of what it was about, nor did he know that any thing more was done in the settlement than the execution of a note by him to the defendant for money, which complainant owed to defendant, for the price of the same slave, West having previously purchased her from Kerby, as executor of J ames Hendrick’s estate. The witness bought the slave and executed his note to defendant, as the date of the note showed in December, 1817, payable 1st January, 1818; but supposes there was a mistake either in the date of it, or as to the time it was made payable. He said he had then no recollection that West had received any money of Kerby at the time of the said settlement. He was not even positive that the settlement took place at the time he boughtthe slave.
Money paid by mixtake or fraudulently coerced, may be re-bill in chan-cm'-v-
Caperton, for plaintiff; Turner, for defendant,
The bare mention of the contradictory statements in these two depositions, is sufficient without comment, to show that they are entitled to no weight.
The decree of the circuit court must be reversed with costs, and the cause remanded with directions to enter a decree in favor of the complainant, for the amount which the defendant collected from him on the replevin bond, with interest from the time it was paid, and costs.